"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KATHLEEN M. STORLL, ) | Case No. SACV 05-00557 (MLG) |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| v. ) | |
| JO ANNE B. BARNHART, ) Commissioner of the ) Social Security ) Administration, ) | |
| Defendant. ) | |

I.  **Procedural and Factual History**

Plaintiff Kathleen M. Storll ("Plaintiff") seeks judicial review of the Commissioner's final decision denying her application for Social Security Disability Insurance benefits.  In accordance with the Court's Case Management Order, the parties have filed a joint stipulation ("JS") of disputed issues.  The matter is ready for decision.

Plaintiff applied for Social Security Disability Insurance benefits on June 5, 2001. (Administrative Record ("AR") at 23).  She alleges disability beginning April 30, 1999, due to back, shoulder, and leg

pain, as well as depression. (AR at 24)

Plaintiff was born on February 28, 1957 and was 47 years old at the time of the administrative hearing. She completed a high school education and completed two years of college. She worked as a respiratory therapist from November 1980 through April 1999 at the Children's Hospital of Orange County. She received worker's compensation benefits from 1999 through 2001. (AR at 819).

Plaintiff alleges disability arising in part from a work-related accident that occurred on January 25, 1997. In the course of her employment, she was riding in an ambulance that was struck by another vehicle, causing Plaintiff substantial physical injuries. After three months of physical therapy and treatment, she was able to return to work with limited duties. However, Plaintiff's injuries were exacerbated by another car accident that occurred on June 25, 1998. After more physical therapy and medical treatment, Plaintiff again returned to work, part time, in January 1999. She worked three days per week, four hours per day, in direct patient care. However, after a few weeks she had to stop working at this job because it caused her severe back and leg pain. She received training in pulmonary function testing and was transferred from direct patient care to a desk job. However, sitting all day increased the pain in her lower back and she became very depressed. She felt "as though she were failing in everything . . . did not know where she fit in . . . and felt distraught and depressed." (AR at 700). While on a field trip with her nephew's school, she fractured her ankle and missed two additional weeks of work. She returned to work in mid-April, 1999, but after one week stopped because of the pain. She has not returned to work. Depression about her pain and injuries led to

treatment with Paxil. (AR at 701). She gained more than 50 pounds, which "contributed to her physical pain" and made her feel "as if she looked ugly." (AR at 700).

Plaintiff's application was denied at the initial stages of the administrative process, and upon reconsideration. (AR at 59-63). A de novo hearing was held on February 4, 2003, before Administrative Law Judge (ALJ) Ellen M. Koldeway, at which Plaintiff, represented by counsel, testified. (AR at 286-97). Barbara McNutt, Plaintiff's sister, testified as a witness on behalf of Plaintiff. A supplemental hearing was held on July 28, 2004. Dr. Alanson Mason testified as a medical expert and Alan Boroskin testified as a vocational expert.

On September 16, 2004, the ALJ issued an unfavorable decision, finding that Plaintiff suffers from the severe impairments of degenerative disc disease in the lumbosacral spine, history of neck pain related to a musculoligamentous sprain/strain, a history of left shoulder, left hip and left knee contusions, a history of a healed laceration to the right knee, a healed left ankle malleolar avulsion fracture, right shoulder pain secondary to a musculoskeletal strain/sprain/tendinitis, obesity, and a history of asthma and hypertension. The ALJ found that Plaintiff has a number of physical limitations as a result of these medical conditions, including restrictions on how much she may lift and carry, how long she can sit and stand, as well as the number of work breaks she requires. (AR at 35). However, with respect to Plaintiff's claim of depression, the ALJ found that she did not have a "severe" impairment within the meaning of the social security regulations. (AR at 28); *see* 20 C.F.R. § 404.1520(c). The ALJ found that Plaintiff could not return to her past relevant work, but that she could perform a significant range of light

work. The ALJ concluded that Plaintiff was not disabled under Rule 202.21 of the Medical-Vocational Guidelines.

The Appeals Council denied Plaintiff's request for review. Consequently, the ALJ's decision became the Commissioner's final decision. (AR at 59-63). Plaintiff timely commenced this action for judicial review.

Plaintiff contends that the ALJ: (1) improperly accepted the Vocational Expert's testimony, even though his description of available jobs varied from that contained in the Dictionary of Occupational Titles; (2) erroneously concluded that Plaintiff's mental impairment was not severe; and (3) erroneously rejected Plaintiff's subjective complaints of pain and depression. Plaintiff requests a remand for an award of benefits. The Commissioner disagrees and contends that the Commissioner's final decision be affirmed.

After reviewing the parties' respective contentions and the record as a whole, the Court finds Plaintiff's contention regarding the ALJ's non-severity finding to be meritorious and remands this matter for further proceedings consistent with this opinion.[1]

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's

---

[1] The court will only address the non-severity finding in detail. However, as noted above, Plaintiff also challenges the ALJ's determinations regarding the credibility of Plaintiff's testimony as well as the weight to be given to the opinion of the vocational expert. Because the ALJ erred by finding Plaintiff's mental impairment non-severe, the Court does not reach these remaining issues and will not decide whether these issues would independently warrant relief.

4

findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

### III. **Discussion and Analysis**

The ALJ's conclusion that Plaintiff's mental impairment was not "severe" is not supported by substantial evidence. The existence of a severe impairment is demonstrated when the evidence establishes that the impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work

setting. 20 C.F.R. § 404.1521(b).  The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). An impairment is not severe only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Here, Plaintiff has offered sufficient evidence to demonstrate that her mental impairment has more than a minimal effect on her ability to perform work-related functions.  In addition to Plaintiff's subjective complaints, almost every physician (more than five of them) who evaluated Plaintiff's mental state found that she experienced some degree of depression or other mental disorder.  Although the physicians' assessments varied in terms of severity, all indicated a level of impairment that meets the "de minimis" requirement at this stage of the inquiry.  *Smolen*, 80 F.3d at 1290. The ALJ simply did not persuasively explain why he rejected all of these findings.

For example, on August 29, 2000, in connection with her treatment for her physical injuries, Dr. Steven Moss, Psy.D., from St. Jude Medical Center, conducted a psychological evaluation, including what he deemed to be a "valid MMPI-2," which suggested that Plaintiff "has a long pattern of poor impulse control," a "long standing personality problem," and "appears to be immobilized and withdrawn and has no energy for life." On the Beck Depression Inventory, Plaintiff scored in the "mildly depressed range," and on the State-Trait Anxiety Inventory, she "scored in the high range for both current anxiety and for a tendency towards anxiety in her daily life." Dr. Moss noted Plaintiff's ongoing treatment with Paxil since 1997. He stated that she likely has a "personality disorder" or "dysthmic disorder." (AR at 313).

1 Subsequently, Plaintiff began individual psychotherapy with Dr. Moss.
2 　　The ALJ discounted Moss' conclusions because while they "did
3 indicate . . . the claimant's overall mood was depressed, [they also
4 indicated] she was of average intelligence; her recent, remote and
5 immediate memory was intact, her speech was normal, thought and
6 perception were normal; and her judgement and insight were slightly
7 below average."  Thus, the ALJ found that the "objective record does not
8 contain actual objective clinical findings suggestive of profound mental
9 symptomology of debilitating proportion. At no time has the claimant
10 required psychiatric hospitalization, nor does it appear that the
11 claimant's medical providers sought hospitalization of the claimant."
12 (AR at 27).
13 　　In making this assertion, the ALJ improperly discounted Moss's
14 opinion. Moss' clinical evaluation and conclusions constitute "objective
15 clinical findings," even though based in part on Plaintiff's subjective
16 complaints and even though Plaintiff has never required hospitalization.
17 Furthermore, Plaintiff's mental illness need not be "profound," of
18 "debilitating proportion" or severe enough to warrant hospitalization,
19 as the ALJ implies it must, in order to meet the *de minimis* step two
20 severity threshold.
21 　　On July 2, 2001, Plaintiff underwent another psychiatric exam that
22 also reflected a severe mental impairment. Dr. Ted R. Greenzang, M.D.,
23 a clinical professor at University of California, Irvine, performed the
24 exam.  Among other detailed findings of mental impairment, Greenzang
25 found that "[d]ue to her prominent dysphoric symptoms, symptoms of
26 anxiety, physiological manifestations of stress, and the emotional
27 handicap precipitated by her physical symptoms, she would manifest
28 marked work function impairment from a psychiatric standpoint even in a

minimally stressful work environment." (AR at 763). The ALJ gave these findings "little weight" because Greenzang noted that Plaintiff might have been malingering during the MMPI-II test. (AR at 709). However, Dr. Greenzang took that into account in making his ultimate findings.

Plaintiff was also seen by Dr. Joel J. Frank, M.D., for a psychiatric examination in connection with her worker's compensation claim on February 7, 2002. Dr. Frank found no evidence of malingering, and instead found Plaintiff "cooperative for evaluation." He stated that Plaintiff "tends to deny depressed mood but then goes on to acknowledge symptoms of feeling discouraged, feelings of failure, lack of enjoyment in activities, history of suicidal ideation previously, irritable mood, lack of interest in others and sleep dysfunction." Dr. Frank diagnosed "Depressive Disorder, not otherwise specified." (AR at 784). He found that Plaintiff's depression was linked to her January 25, 1997 car accident and her resulting injuries and pain. He noted Plaintiff's on-going treatment with Paxil, beginning shortly after her work-related accident in 1997.

The ALJ was "unable to credit" Dr. Frank's opinion, even though Frank met with and personally examined Plaintiff because Dr. Frank referenced medical records that showed that Plaintiff had been treated for depression, but failed to note that those records also showed that her depression had been in remission since April 1998.(AR at 27). Furthermore, Frank relied in part on Dr. Moss's findings (discussed above) and the ALJ found those to not be based on objective evidence. (AR at 27). Thus, despite the fact that Frank conducted his own examination, in addition to reviewing Plaintiff's medical records, the ALJ gave his opinion no credit.

Instead, the ALJ relied on the January 15, 2002, findings of State

Agency psychiatric examiner Dr. Sohini P. Parikh.  However, Dr. Parikh also found that Plaintiff suffered from a mental disability.  As the ALJ noted in her opinion, Dr. Parikh reported that Plaintiff "was depressed and had a lot of pain in her spine and lower extremities." (AR at 27 & 662).  Dr. Parikh diagnosed "a mood disorder because of medical condition." (AR at 662).  She found Plaintiff to be "cooperative" and "attentive," and noted no evidence of malingering.  Parikh stated, "From a psychiatric standpoint, the patient's prognosis is expected to improve if her medical condition improves." The ALJ did not note or appear to consider this last conclusion, and instead stated that Parikh's examination revealed no mental limitations. (AR at 28).

The ALJ also relied on the findings of Dr. Halimah McGee, an examining psychologist.  Dr. McGee found that Plaintiff did "not evidence cognitive or emotional limitations regarding her ability to work." (AR at 686). However, even Dr. McGee diagnosed Plaintiff with "depressive disorder, not otherwise specified." (AR at 686).  McGee noted that Plaintiff presently takes Paxil and that he diagnosed Plaintiff with depression "per claimant's report and medication." The ALJ entirely omitted this finding of depression by McGee.  The ALJ instead stated that both McGee and Parikh's findings "contradict the conclusion that the claimant is limited with respect to mental functioning." (AR at 28).

Finally, the ALJ rejected a State Agency assessment reflecting that Plaintiff was moderately limited in several areas of mental functioning and limited to simple repetitive tasks with no public contact.  The ALJ found this assessment "not persuasive," because it did not take into account McGee or Parikh's findings of no mental impairment. (AR at 28). However, as noted above, both McGee and Parikh found some degree of

mental impairment. Again, the ALJ improperly disregarded valid medical evidence of Plaintiff's mental impairment.

These objective findings are consistent with Plaintiff's subjective complaints of depression. The Commissioner argues that the medical records do not support the existence of a severe mental impairment. (JS at 24-25). However, Plaintiff's impairments and complaints of depression are consistently and objectively documented in her medical records. Given the minimal threshold required to show that an impairment is severe, the ALJ's determination that Plaintiff's mental impairments were not severe is not supported by substantial evidence.

## V. Conclusion

The decision whether to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(remanding case for reconsideration of credibility determination).

Here, the evidence shows an impairment that can be considered

"severe" within the meaning of the Social Security Regulations, but which might not prevent Plaintiff from performing some work in the national economy (the ALJ already found Plaintiff unable to perform her past work because of physical disability).  However, that is not a determination that this Court can make. Accordingly, the case is remanded for further evaluation in accordance with the five-step sequential process.

### ORDER

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

Dated: August 21, 2006

/s/ Marc L. Goldman
Marc L. Goldman
United States Magistrate Judge